UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| STACY WHEAT,<br><br>    Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of the Social<br>Security Administration,<br><br>    Defendant. | Case No. CV 09-02569 AJW<br><br>MEMORANDUM OF DECISION |

Plaintiff filed this action seeking reversal of the decision of the defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for supplemental security income ("SSI") benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

The procedural facts are undisputed and are summarized in the joint stipulation. Following a remand order issued by the Appeals Council, an administrative law judge (the "ALJ") denied benefits in a February 5, 2008 written hearing decision that constitutes the Commissioner's final decision in this case. [JS 2; Administrative Record ("AR") 5-7, 20-36]. The ALJ found that plaintiff had severe impairments consisting of substance use disorder, borderline intellectual functioning, and hepatitis C. [AR 23]. The ALJ concluded that plaintiff's impairments left him "mentally unable to complete a full work day on a regular and

continuing basis," but that if plaintiff stopped using alcohol, he would be able to perform work available in significant numbers in the national economy. [AR 29-36]. Accordingly, the ALJ concluded that alcohol use was a contributing factor material to the disability determination, and that plaintiff was "not disabled" through the date of the ALJ's decision.[1] [JS 2; AR 36].

## Standard of Review

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Stout v. Comm'r Social Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)(internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Soc. Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir.1999)).

## Discussion

**Listing of impairments**

Plaintiff contends that the ALJ failed properly to consider whether plaintiff's impairments met or equaled the listing for mental retardation in 20 C.F.R. Part 404, Subpart P, Appendix 1, section 12.05C. [JS 3-11].

A claimant is presumptively disabled and entitled to benefits if he or she meets or equals a listed

---

[1] A claimant is ineligible to receive disability benefits if drug or alcohol addiction is a "contributing factor material to the determination of disability." 20 C.F.R. §§ 404.1535(a), 416.935(a). If the Commissioner finds that the claimant is disabled and has medical evidence of drug or alcohol addiction, the Commissioner must determine if the claimant would still be disabled if he or she stopped using drugs or alcohol. 20 C.F.R. §§ 404.1535(b), 416.935(b); Parra v. Astrue, 481 F.3d 742, 747 (9th Cir. 2007), cert. denied, 552 U.S. 1141 (2008). If a claimant would still be disabled if he or she stopped using drugs or alcohol, drug or alcohol addiction is not a contributing factor material to the determination of disability. 20 C.F.R. §§ 404.1535(b), 416.935(b).

1  impairment. To "meet" a listed impairment, a disability claimant must establish that his condition satisfies
2  each element of the listed impairment in question. See Sullivan v. Zebley, 493 U.S. 521, 530 (1990);
3  Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999).  To "equal" a listed impairment, a claimant "must
4  establish symptoms, signs, and laboratory findings" at least equal in severity and duration to each element
5  of the most similar listed impairment. Tackett, 180 F.3d at 1099-1100 (quoting 20 C.F.R. 404.1526); see
6  Sullivan, 493 U.S. at 531.

7  "The structure of the listing for mental retardation (12.05) is different from that of the other mental
8  disorders listings.  Listing 12.05 contains an introductory paragraph with the diagnostic description for
9  mental retardation. It also contains four sets of criteria (paragraphs A through D). If [a claimant's]
10 impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets
11 of criteria, we will find that [the claimant's] impairment meets the listing." 20 C.F.R. Pt. 404, Subpt. P,
12 App.1, § 12.00A.

13 The introductory paragraph of section 12.05 of the listing states: "Mental retardation refers to
14 significantly subaverage general intellectual functioning with deficits in adaptive functioning initially
15 manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the
16 impairment before age 22. [¶] The required level of severity for this disorder is met when the requirements
17 in A, B, C, or D are satisfied."   20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.

18 Section 12.05C states that a claimant must have "[a] valid verbal, performance, or full scale IQ of
19 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related
20 limitation of function[.]" 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C. When a claimant's verbal,
21 performance, and full scale IQs differ, "the lowest of these [is used] in conjunction with 12.05." 20 C.F.R.
22 Pt. 404, Subpt. P, App. 1, § 12.00.6.c.

23 Dr. Mark Pierce, a consultative psychologist retained by the Commissioner, conducted a
24 psychological evaluation of plaintiff on September 11, 2007. [AR 409-419].  As part of his examination,
25 Dr. Pierce administered a battery of psychological tests, including the Wechsler Adult Intelligence Scale -
26 Third Edition ("WAIS-III"). [AR 409, 412-413].  Dr. Pierce reported that plaintiff attained a verbal IQ of
27 72, a performance IQ of 69, and a full-scale IQ of 68, placing him in the "borderline-to-top deficient range
28

1 for verbal, performance, and full scale" IQ.[2] [AR 316-317]. Dr. Pierce's diagnostic impression was
2 "dysthymic disorder," "alcohol abuse/dependence, chronic and continuing," and "borderline intellectual
3 functioning." [AR 413-414]. He opined that plaintiff retained the capacity to perform at least simple,
4 repetitive work. [AR 414]. He also concluded that plaintiff's alcohol dependence "exacerbates depression
5 and undermines cognitive processes." [AR 416]. Dr. Pierce said that if plaintiff "was totally abstinent from
6 alcohol," his condition would be "[o]nly somewhat improved for [sic] underlying dysthymia." [AR 417].

During the administrative hearing on January 25, 2008, the ALJ elicited testimony from a medical
8 expert, Dr. Olujimi Bamgbose, a licensed clinical psychologist. [See AR 94-107]. Dr. Bamgbose testified
9 that he had reviewed plaintiff's medical records, including Dr. Pierce's consultative examination report, and
10 was familiar with the regulations regarding the effect of drug and alcohol use upon the determination of
11 disability. [AR 96].

12 Plaintiff's counsel asked Dr. Bamgbose whether plaintiff's impairments equaled section 12.05C
13 "because he does meet the IQ of 60 to 70" and has "other mental or physical components that additional
14 affect his ability to work." [AR 102]. Dr. Bamgbose responded: "It is possible that he equals a listing. The
15 only limitation is . . . clarification of 22 [sic], and we know that he went through high school . . . ." [AR
16 102]. Plaintiff's counsel interjected, "I'm sorry, Your Honor. He dropped out in the ninth or tenth grade.
17 He doesn't remember. He didn't complete high school."[3] [AR 102]. Plaintiff's counsel then asked plaintiff,
18 "Why didn't you complete high school?" [AR 103]. Plaintiff answered, "I just didn't want to go." [AR
19 103]. Plaintiff's counsel asked, "Were you taking any special ed classes or anything like that?" [AR 103].
20 Plaintiff replied, "For a little while." [AR 103].

---

[2] "In general an IQ of 70 or below indicates mental retardation (mild = 50/55-70; moderate = 35/40-50/55; severe = 20/25-35/40; profound = below 20/25); an IQ of 70-85 signifies borderline intellectual functioning." Stedman's Medical Dictionary retardation (27th ed. 2000); see also Brown v. Sec'y of Health & Human Servs., 948 F.2d 268, 270 (6th Cir. 1991)(noting that "[t]he Diagnostic and Statistical Manual of Mental Disorders (3d ed. 1987) ('DSM-III-R') distinguishes between four degrees of severity of intellectual impairment: mild, moderate, severe, and profound. I.Q. levels in the range of '50-55 to approx. 70' are labeled as 'Mild Mental Retardation.'").

[3] Dr. Bamgbose had not been present earlier during the hearing, when plaintiff's counsel asked plaintiff to "tell me the highest level of education that you completed." [AR 80, 96]. Plaintiff answered, "I believe it was the tenth grade." [AR 80].

4

1    After hearing plaintiff's testimony about his education, Dr. Bamgbose reiterated that "[i]t is possible
2 that he equals the listing of 12.05." [AR 103]. Plaintiff's counsel then asked Dr. Bamgbose if plaintiff's
3 condition would continue to exist if he did not use drugs and alcohol. Dr. Bamgbose responded: "Yeah.
4 Yes. It's really, it probably would." [AR 103].

5    On further questioning by the ALJ, Dr. Bamgbose described Dr. Pierce's report of plaintiff's
6 condition as "accurate" and acknowledged that Dr. Pierce did not preclude plaintiff from simple and
7 repetitive work. [AR 104-105]. Plaintiff's counsel then asked Dr. Bamgbose whether "there are people that
8 are severely mentally retarded that clearly meet the listings [and] that can still perform simple, repetitive
9 tasks," and Dr. Bamgbose agreed. Plaintiff's counsel added: "But that's not the question that's being asked
10 right now. I'm asking if he equals 12.05C, and you testified that in your opinion he does[,] and your opinion
11 doesn't have to be exactly the same as Dr. [Pierce], correct?" [AR 106]. Dr. Bamgbose replied, "Correct."
12 [AR 106].

13    The ALJ rejected Dr. Bamgbose's equivocal testimony that plaintiff's impairments "could equal"
14 listing 12.05C and "probably would" continue to exist absent drug or alcohol use. [AR 28-29]. The ALJ did
15 not question the validity of plaintiff's IQ scores or the existence of a physical or other mental impairment
16 imposing an additional and significant work-related limitation of function, both of which are required to
17 satisfy section 12.05C. [See AR 29]. The ALJ, however, assailed Dr. Bamgbose's testimony as inconsistent
18 with, or unsupported by, the evidence as a whole concerning plaintiff's intellectual functioning before age
19 22. [AR 28-29, 35]. The ALJ noted that plaintiff gave inconsistent statements concerning his special
20 education placement. [AR 28, 35]. During the hearing, plaintiff testified that he was in special education
21 classes "[f]or a little while." [AR 28, 35, 103]. Dr. Pierce, however, said that plaintiff reported that he did
22 not need special education assistance in school. [AR 28, 35, 410]. When asked "Did you attend special
23 education classes?" in a December 2003 disability report, plaintiff answered "no." [AR 28, 35, 203].
24 Plaintiff did not mention special education placement, a learning disorder, or cognitive impairment in his
25 pre-hearing disability reports. [AR 28, 188-231]. Plaintiff's consultative examination reports and treatment
26 records did not document a history of a learning disorder or special education placement. [AR 28, 35, 312-
27 315, 409-414].

28    The ALJ also concluded that plaintiff's work history did not support the existence of an impairment

5

1 in intellectual functioning prior to age 22. [See AR 28-29]. Plaintiff had worked as a warehouse worker and
2 forklift operator, aircraft mold maker, construction worker, camper assembler, aircraft assembler, lottery
3 sign assembler, and bricklayer. [AR 115-122, 188-194]. The vocational expert testified that several of
4 plaintiff's past jobs were semiskilled rather than merely unskilled. [AR 28, 123-124]. There was no
5 evidence that plaintiff "required special accommodations in any of his past jobs, or that he worked in a
6 sheltered work environment secondary to impaired intellectual functioning."[AR 28]. The evidence did not
7 show that plaintiff left his jobs due to a medically determinable mental impairment unrelated to his alcohol
8 use. [AR 28]. To the contrary, plaintiff told a consultative psychiatrist that he was laid off from his job as
9 a warehouse worker in 2001 because he was showing up to work late or not at all secondary to his drinking
10 problem. [AR 28, 312]. While plaintiff's past jobs did not qualify as past relevant work for purposes of the
11 disability determination [AR 31, 175], the ALJ reasonably concluded that plaintiff's work history failed to
12 establish an onset of subaverage general intellectual functioning before age 22.

13 In contrast to Dr. Bamgbose's tentative assessment of medical equivalence, Dr. Pierce opined that,
14 based on clinical data and test results, plaintiff's impairments did not preclude the performance of simple,
15 repetitive work. [AR 414]. Dr. Pierce's conclusion that plaintiff's alcohol dependence "exacerbates
16 depression and undermines cognitive processes" tends to support the ALJ's determination that plaintiff's
17 intellectual functioning would improve enough to enable him to work if he stopped consuming alcohol. [See
18 AR 316, 413-414, 416].

19 Plaintiff's reliance on Marcia v. Sullivan, 900 F.2d 172 (9th Cir. 1990) is misplaced. In that case,
20 the Ninth Circuit held that an ALJ's finding that "[t]he claimant has failed to provide evidence of medically
21 determinable impairments that meet or equal" a listed impairment was "insufficient to show that the ALJ
22 actually considered equivalence." Marcia, 900 F.2d at 176 (italics omitted). Here, the ALJ "explain[ed]
23 adequately his evaluation of" the evidence bearing on equivalence, Marcia, 900 F.2d at 176, and gave
24 specific reasons, supported by the record, for finding that plaintiff's impairments did not equal listing
25 12.05C.

26 For all of these reasons, the ALJ did not err in rejecting Dr. Bramgbose's opinion. See Sousa v.
27 Callahan, 143 F.3d 1240, 1244 (9th Cir. 1998) ("The Commissioner may reject the opinion of a non-
28 examining physician by reference to specific evidence in the medical record.").

**Development of the record**

Plaintiff also contends that the ALJ "explicitly confirmed" that an "ambiguity in the record" exists regarding plaintiff's attendance in special education classes, and therefore the ALJ committed legal error by failing to develop the record. [JS 12-16].

The ALJ has a "special duty to fully and fairly develop the record and to assure that the claimant's interests are considered," even where, as here, "the claimant is represented by counsel." Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir. 2003)(quoting Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)); see Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996). However, it remains the claimant's "duty to prove that she [or he] was disabled" and to produce evidence supporting a disability claim. Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001)(citing 42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1512(a)&(c)). The ALJ's "duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." Mayes, 276 F.3d at 459-460. A claimant may not improperly shift his or her own burden to the ALJ. Mayes, 276 F.3d at 459-460.

Dr. Bamgbose testified that the record was adequate to allow him to render an opinion as to plaintiff's mental status. [AR 95]. The ALJ was entitled to consider inconsistencies between Dr. Bamgbose's testimony and the record *as a whole*, which did not support the conclusion that plaintiff attended special education classes. See 20 C.F.R. §§ 404.1527(d)(4), 416.927(d)(4)("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."). Plaintiff's statements about attending special education classes were inconsistent, not ambiguous. The ALJ permissibly resolved those inconsistencies by rejecting plaintiff's testimony that he attended special education classes "for a little while" and crediting his statements in disability reports and to physicians denying that he ever attended special education classes. [AR 103]. See Morgan, 169 F.3d at 603 ("The ALJ is responsible for resolving conflicts in medical testimony, and resolving ambiguity. Determining whether inconsistencies are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount the opinions of [a treating doctor and an examining doctor] falls within this responsibility.")(internal citations omitted).

Furthermore, plaintiff's counsel did not elicit any additional testimony from plaintiff detailing the nature or length of any special education placement, or explaining why he previously denied special

education placement. Plaintiff did not submit any school records (or other records pertaining to his intellectual functioning before age 22) to the ALJ or the Appeals Council. Plaintiff's counsel did not ask the ALJ to obtain additional records, did not request a continuance of the hearing, and did not request that the hearing record be left open for the submission of additional evidence. [AR 125-127]. Plaintiff has a different attorney in this case, but he has not submitted any additional records documenting plaintiff's special education placement—or even represented that such records exist. See Duenas v. Shalala, 34 F.3d 719, 722 (9th Cir. 1994) (holding that the ALJ did not violate her duty to develop the record where "[n]o request was made of the ALJ to develop the record, and it is unclear what further the ALJ could have done . . . ."), cert. denied, 514 U.S. 1051 (1995).

The record was adequate to support the ALJ's decision. Accordingly, the ALJ did not breach his duty to develop the record.

**Nonexamining physician's opinion**

Plaintiff contends that the ALJ improperly disregarded the August 2004 opinion of nonexamining state agency physician, Dr. Anne Khong, who opined that plaintiff had moderate functional limitations and experienced one or two episodes of decompensation. [AR 326-327, 354].

Plaintiff's contention is meritless. Although he did not identify Dr. Khong by name, the ALJ noted that the state agency "psychiatric consultant in August 2004 found that with substance use disorder, the claimant would be able to do simple repetitive tasks, but [was] not likely able to complete a normal workday or workweek, and without substance use disorder, the claimant would be able to do simple repetitive tasks and possible even complex tasks." [AR 27]. Thus, the ALJ considered Dr. Khong's opinion, and her opinion supports the ALJ's conclusion that plaintiff was disabled when his substance use disorder was taken into account but would not be disabled if he stopped drinking alcohol.

**Conclusion**

For the reasons stated above, the ALJ's decision is supported by substantial evidence and is free of legal error. Accordingly, defendant's decision is affirmed.

April 21, 2010

ANDREW J. WISTRICH
United States Magistrate Judge

8